DORA ADLER, APPELLEE, V. MORITZ KOHN, APPELLANT.

FILED JUNE 23, 1914.  No. 17,725.

1. **Vendor and Purchaser:** TITLE: PURCHASE MONEY.  Ordinarily a contract for the sale and purchase of real estate requires the vendor to execute and tender to the vendee a deed conveying to him a good merchantable title to the premises, and until such deed is tendered to the purchaser he cannot be required to pay the purchase price named in the contract.

2. ———: ———: RIGHT TO MONEY IN ESCROW.  When a part of the price has been deposited in a bank in escrow, to be paid over to the vendor upon the delivery of a deed to the vendee conveying to him a good merchantable title, the vendor is not entitled to claim a forfeiture of the sum so deposited until such a deed has been tendered.

3. ———: ———: ———: RESCISSION.  Where the vendor, failing to execute and deliver such a deed to the vendee, proposes to rescind the contract, and such proposal is assented to by the vendee, and the contract is rescinded, ordinarily the vendor will not be entitled to recover that part of the purchase price which has been deposited in the bank in escrow.

4. ———: ———: ———: ———.  The execution and delivery to the bank, where the escrow is deposited, of a deed to the premises after such rescission will not entitle the vendor to maintain an action to recover the amount of the deposit.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE.  *Reversed, and decree entered.*

*Hainer & Craft,* for appellant.

*F. A. Boehmer, A. M. Morrissey, F. M. Tyrrell* and *Field, Ricketts & Ricketts, contra.*

BARNES, J.

This was a suit in equity brought by Dora Adler against Moritz Kohn and the Central National Bank of Lincoln to recover the sum of $650, with interest from October 26, 1911, on a contract for the sale of certain real estate, and to have the contract canceled.

Plaintiff alleged in her petition that she was the owner of lot 8, block 85, in the city of Lincoln, and that on July 26, 1911, she and her husband, Moritz Adler, entered into a written contract with Moritz Kohn, whereby she agreed to sell and convey said real estate to said Moritz Kohn by a good and merchantable title. The contract, which was made a part of the petition, recites, in substance, that the party of the first part agrees to sell and convey unto the second party, upon the performance of the covenants hereinafter set forth, the property above described. The second party agrees to pay as the purchase price of said property the sum of $7,650, in the following manner, to wit: $650 shall be paid in cash on delivery of this contract, the same to be placed in the Central National Bank of Lincoln, Nebraska, together with a copy of the contract in escrow until the abstract of title to said premises has been examined and approved by the second party, and the balance of $7,000 shall be paid in cash on or before the 20th day of August, 1911, when the deed from Mrs. Adler to the premises shall be delivered to the second party, the said $650 so deposited in the bank shall be paid over to Mrs. Adler on the 20th day of August, 1911, and if the second party fails to pay the balance of $7,000 by said date and take up his deed he shall forfeit the $650 so paid in escrow, and said money shall be paid to the first party to cover damages sustained by her in the sale of this property by first party to the second party. The contract also provided for the payment of delinquent taxes on said property, each party to pay one-half of the same. The first party agreed to convey $8,000 worth of

fire insurance on said property and $5,000 worth of tornado insurance thereon to the second party; second party to pay the first party the unearned premium due on the policies. The petition further alleged that the defendant paid to the Central National Bank as a part of the purchase price, and as a forfeit, the sum of $650. It was alleged that Laura Kohn is the wife of Moritz Kohn. It was also alleged that thereafter, on the 20th day of August, 1911, plaintiff and defendant entered into an oral contract, by the terms of which the performance of the first contract and the payment of the money therein mentioned was extended until such time as the plaintiff could secure a deed duly signed and acknowledged by Moritz Adler, her husband, who was then in Austria. It was alleged that the defendant had caused the contract to be recorded in the office of the register of deeds, and that the same was a cloud on the plaintiff's title. It was further alleged that on August 25 and September 22, 1911, the defendant examined and approved the abstract of title to the premises; that plaintiff has always been and still is ready and willing to perform the agreement on her part on being paid the remainder of the purchase price pursuant to the agreement. Finally, it was alleged that on or about the 26th day of October, 1911, plaintiff tendered to defendant and deposited in the Central National Bank a warranty deed showing a good and merchantable title to said property, together with an abstract of title showing said plaintiff had a good and merchantable title to said property, but the plaintiff then and there and ever since has refused to accept said deed or pay the balance of the purchase price.

The bank filed an affidavit and disclaimer showing that it held the money and had no interest in the controversy, and was ready and willing to pay the $650 to the one that the court should decree was entitled to receive it.

Defendant Kohn answered setting forth, in substance, an admission of the making of the contract, and its recording as pleaded; alleged that he had deposited the $650, in accordance with the terms of the contract, in escrow in the

defendant bank; that Laura Kohn is, and was during all the times mentioned, the wife of Moritz Kohn, and denied generally all of the other allegations of the petition. Defendant further alleged that Dora Adler and Moritz Adler were husband and wife, and constituted one family; that the lot mentioned in the petition was and is the homestead of said Dora and Moritz Adler, under and by virtue of the homestead laws of the state of Nebraska; that on July 26, 1911, the time of the execution of the contract sued upon, plaintiff represented to defendant that she had in her possession a power of attorney in due form of law and fully executed by her husband, Moritz Adler, authorizing and empowering her to sell and convey said lot, and that she thereupon agreed to execute and deliver to defendant on August 20, 1911, a warranty deed duly and fully executed in accordance with the usage and custom of the country, and in the English language, for said premises, and accompany the same by an abstract of title duly executed and certified by a competent abstracter, showing the title conveyed by said deed to be a good and merchantable title conveying a perfect title of record from said Dora and Moritz Adler, as husband and wife, to the defendant Moritz Kohn.

By defendant's answer it was further alleged that Dora Adler did not have and did not acquire a valid power of attorney from said Moritz Adler authorizing such conveyance; that the instrument which she then had and held was prepared and written or printed in the German language, and not in the English language, and was not in the form of a warranty deed used and employed in the state of Nebraska for the conveying of real property, and was an agreement which by reason of its terms, and the fact that it was in the German language, was not admissible to record in the deed records of Lancaster county, Nebraska, and was not such a deed as had been agreed upon by and between the parties to the contract; that on August 20, 1911, plaintiff applied to the defendant, Moritz Kohn, and requested further time within which to secure a deed duly signed and acknowledged by Moritz

Adler, her husband, and which deed, when executed by herself and husband, would fully and duly convey a perfect legal title to the premises to the defendant, subject only to the taxes mentioned in the contract; that thereupon defendant extended the time within which plaintiff could comply with her contract until the 20th day of September, 1911; that on the 22d day of September, 1911, plaintiff tendered to the defendant an instrument purporting to be a deed for said premises which deed was executed partly in the English and partly in the German language, and was not in the form commonly used in making conveyances and deeds in the state of Nebraska, and was not subject to be recorded in the office of the register of deeds of Lancaster county; that the register of deeds, to whom it was offered for registration, refused to record the same; that plaintiff has not complied with the contract for a good and merchantable title.

Defendant further alleged that he had been all along ready and willing to close up the transaction in accordance with the contract, and to pay the full amount called for by the same in cash upon delivery to him of the deed contemplated by the contract for a merchantable conveyance which was subject to record; that the plaintiff, failing to produce such a deed, proposed to the defendant that he release her from the contract, and that she could and would sell the premises to other parties; that thereupon the defendant assented to said release, and delivered to plaintiff the key to the premises, which she had theretofore handed to him, and also immediately thereafter, at the request of the plaintiff, duly executed and delivered to her a quitclaim deed to said premises, which deed was retained by the plaintiff and her attorney; that the contract for the sale and purchase of the property sued upon in this action was thereby rescinded and abandoned, and that neither of the answering defendants have or make any claim to any part of the premises in question; that, by reason of the foregoing facts, plaintiff has no right, claim or title to the money deposited in the Central National Bank, which

Adler v. Kohn.

is the money in controversy, and that defendant Moritz Kohn is entitled to have said money repaid to him.

Plaintiff for a reply denied each and every allegation of new matter contained in the answer. The cause was tried to the court without the intervention of a jury, and on February 8, 1912, judgment was rendered in favor of the plaintiff and against the defendant Moritz Kohn for the sum of $650, with interest from October 26, 1911, together with the costs of suit; and it was further decreed that the written contract made between the parties on July 26, 1911, be canceled and set aside and held for naught. From that judgment the defendant Moritz Kohn has appealed.

Defendant contends that the evidence does not sustain the jugdment, and the decree should have been for the defendant. The testimony discloses that plaintiff was the owner of the lot in question, and her husband was absent in Austria; that they wished to sell their property, and plaintiff commenced negotiations to that end with the defendant Kohn. On the 26th day of July, 1911, plaintiff and defendant went to the office of F. A. Boehmer, plaintiff's attorney, in the city of Lincoln, where they made the contract, which is the basis of this suit. The plaintiff at that time claimed to have a power of attorney from her husband to sell and convey the premises. The contract, among other things, provided that plaintiff and her husband should convey to the defendant Kohn a good merchantable title. It also contained a clause that Kohn should deposit $650 in escrow in the Central National Bank, together with the contract, and if he failed to pay the plaintiff $7,000, the balance of the purchase price, by August 20, 1911, and take up the deed, he should forfeit the money so deposited in escrow. It appears that on August 20, 1911, Kohn was ready and willing to close out the contract in accordance with its terms, but plaintiff was not prepared to proceed, and on August 26 they met again at the office of Mr Boehmer, and it there developed that the power of attorney under which Mrs. Adler had been acting was written in the German language and the register of deeds of Lancaster county declined to record the

·same, although it was accompanied by a purported trans-
lation. Thereupon, Boehmer, as attorney for Mrs. Adler,
.suggested that he make out a deed in English and have it
sent to Mr. Adler in Europe for due execution. To this
Mr. Kohn assented, and thereupon Boehmer prepared a
.deed in the English language conveying the property to
Kohn in accordance with the terms of conveyances used in
this country, and the same was sent to Mr. Adler for exe-
.cution. It was agreed that the transaction be held in
.abeyance until the deed so prepared could be returned,
which the parties thought would require about 30 days.
Mr. Boehmer testified, in substance, that it was agreed at
that time that the execution of the deed, including the
:acknowledgment, should be in the English language. He
further testified that when the deed came back the ac-
knowledgement written by him was not filled out; that
there was another acknowledgement on the back of it
which was in the German language, and was different from
the form of acknowledgement which he had prepared in
the English language; that it was different in language and
·form.

On September 22, 1911, Mrs. Adler and Mr. Kohn again
met in the office of Mr. Boehmer, and Mr. Kohn was ready
and willing to close the entire transaction. He produced
.a certificate of deposit for $7,000 on the bank, and was
ready to proceed, but on examination it was found that
the deed returned by Mr. Adler, signed and certified as
above stated, was not in accordance with the usual prac-
·tice and custom, and the register of deeds refused to re-
·cord it for precisely the same reason that he had refused
to record the power of attorney. Thereupon a consulta-
tion between the parties was had, in which attorney Strode
and Judge Stewart participated. Mr. Kohn insisted upon
.a deed which he could have recorded; in other words,
he insisted upon such a conveyance as is customary in this
country. The only positive conclusion reached was that
the officer would not record the so-called deed. Thereupon
the plaintiff proposed to defendant that if he would re-
lease his contract she would sell the property to another,

and asked him to give her the key, which had been previously turned over to him. Mr. Kohn promptly agreed to this proposal, and on the suggestion of Mr. Boehmer executed a quitclaim deed to the premises in question in favor of the plaintiff, which deed was left with her attorney and retained by him, since which time Mr. Kohn has made no claim whatsoever to the property.

The testimony of Mr. Boehmer was corroborated by Doctor P. L. Hall, president of the Central National Bank, in which the deposit was made. On October 27, 1911, the plaintiff executed and acknowledged before her attorney, Frank M. Tyrrell, a deed to the premises, which Tyrrell took to the bank, evidently for the purpose of laying a foundation for this action. This deed was made more than a month after the rescission of the contract. There is no testimony in the record showing or tending to show that plaintiff ever tendered to defendant Kohn any deed conveying a merchantable title to the premises. It was not shown that she ever made any assignment or offer to assign the insurance policies mentioned in the contract.

As we view the evidence, it shows that Mr. Kohn was ready and willing at all times to carry out the contract until Mrs. Adler suggested that it be abandoned, and thereupon he duly quitclaimed the premises and delivered the quitclaim deed to plaintiff's attorney. We fail to find any evidence in the record showing or tending to show that Kohn, at any time, made default in the terms of his contract. The testimony as to the rescission and abandonment of the contract does not seem to be denied, and plaintiff produced no competent evidence to show that she received any damages by the failure to consummate the contract.

Some stress seems to be placed on the proposition that defendant's attorneys examined the abstract of title and approved of it, and it is contended that for that reason plaintiff was entitled to the $650 which had been deposited in the bank. But it was not the abstract that the defendant was purchasing. What he contracted for was the con-

96 Neb. 23

veyance of a good merchantable title to the premises in question, fortified by a proper abstract, and until such conveyance was tendered to him he was not in default, and plaintiff was not entitled to the money so deposited.

In *Justice v. Button*, 89 Neb. 367, the court said: "Ordinarily there is an implied agreement on the part of the vendor in every contract for the sale of land that he will transfer a good title to the vendee, unless the contract relieves the vendor of that obligation." It was further said: "A good title is one that can be sold to a reasonably prudent man who might desire the property, or a title that can be mortgaged to a person of reasonable prudence as security for the loan of money."

We think that the rule thus announced is sustained by the great weight of authority in this country. The deed contemplated by the contract in this case was never executed and tendered to the defendant Kohn, and the testimony is without conflict that he stood ready and willing to complete the transaction on the delivery of the contemplated deed. He appeared at the time and place designated, having with him the money ready to be turned over to the plaintiff, and complete the transaction. On this proposition there is no dispute.

It is elementary that equity will relieve against forfeiture, especially where there is no evidence of any loss or damage. In *Eaton v. Redick*, 1 Neb. 305, it was held that, when the vendor exercised his option to rescind the contract, the parties stand as if no contract had ever subsisted between them.

In *Reiger v. Turley*, 131 N. W. 866 (151 Ia. 491), it was held: "The law abhors forfeitures, and will enforce them reluctantly and only when the right thereto has been clearly contracted for and when the party claiming it has complied with all the conditions imposed upon him by contract or statute. On rescission of a contract to convey land, vendor was bound to return an advance payment made."

As we view the record, the plaintiff was not entitled to the forfeiture, and the money in question should have been

returned by the Central National Bank to the defendant. The judgment of the district court is therefore reversed, and a decree will be entered in favor of the defendant.

JUDGMENT ACCORDINGLY.

REESE, C. J., and ROSE, J., not sitting.