DURLAND TRUST COMPANY, APPELLEE, V. CHARLES AUGUSTYN ET AL., APPELLANTS: JONAS VAN WIE, CROSS-PETITIONER AND APPELLEE.

FILED SEPTEMBER 22, 1923. No. 22484.

1. **Vendor and Purchaser**: DEFAULT OF VENDOR: RECOVERY OF PAYMENTS. When a vendor of land under a contract of sale sells and conveys such land to another and is unable to comply with the terms of his contract, the vendee is entitled to recover back any payments made on the purchase.

2. **Forfeiture**: RECOVERY OF PAYMENTS. If the vendor conspires to hinder and delay the vendee in the performance of the terms of such contract on his part, and thus prevents the prompt payment of the remaining purchase price on the day it is payable, he is not entitled to have a forfeiture of the payments made, but the vendee may recover or have decree for cancelation of a note and mortgage given as advance payments under the contract and may be relieved from further obligation.

APPEAL from the district court for Garfield county: BAYARD H. PAINE, JUDGE. *Reversed, with directions.*

*Guy Laverty* and *Bert M. Hardenbrook,* for appellants.

*Mapes, McFarland & Mapes, Davis & Davis, T. B. Dysart* and *Price & Price, contra.*

Heard before Morrissey, C. J., Aldrich, Day and Good, JJ., Colby and Redick, District Judges.

Colby, District Judge.

This is an action by Jonas Van Wie, cross-petitioner and appellee, to foreclose a real estate mortgage of $3,000. A decree in the suit was entered in favor of the plaintiff Durland Trust Company upon its petition, and in favor of defendant M. D. Cameron upon his cross-petition, each for the foreclosure of their separate mortgages. No objection is made nor is there any contest or issue between the several parties as to these two foreclosure decrees, the only question being as to the foreclosure of the $3,000 real estate mortgage and the issues made by the cross-petition of Jonas Van Wie, the answer and cross-petition of appellants Charles Augustyn and wife, and the reply of cross-petitioner Van Wie thereto.

The undisputed facts appearing in the record are substantially as follows: On July 27, 1920, the cross-petitioner Jonas Van Wie, and Ida Van Wie, his wife, entered into a written contract with appellant Charles Augustyn, whereby they contracted and agreed to sell to said Augustyn 356 acres of land situated in Greeley and Valley counties. Appellants Augustyn and wife executed and delivered to the cross-petitioner, Van Wie, a note for $3,000, and to secure said note executed a real estate mortgage. This note and mortgage were given as the first payment upon the land under the contract of sale and purchase and are the instruments set up in the cross-petition of Van Wie and sought to be foreclosed in this action.

According to the contract the transaction was to be finally consummated on the 1st day of March, 1921, by the delivery of abstract and deed and the payment of the remainder of the purchase price, unless an extension of time was had by reason of defects in the abstract.

The transaction, however, was never consummated, being given up by both parties, and the 356 acres of land were sold and conveyed by Van Wie to J. B. Ramel in the fore part of March, 1921. It also appears from the record that Augustyn, shortly after making his contract with Van Wie, made a contract for the sale of this same land to said J. B. Ramel, which was to be consummated on March 1, 1921.

The contract between Van Wie and Augustyn provides that Van Wie, ten days prior to March 1, 1921, is to furnish Augustyn an abstract showing good, marketable title free of all liens and incumbrances, including taxes for 1920 and all prior years, except a mortgage of $30,000, which was then on said premises and which was to be assumed as a part of the consideration; and it was further agreed that, in case any corrections should be found necessary in the abstract of title, Van Wie should be allowed a reasonable time, not exceeding 30 days, in which to make such corrections and comply with the conditions of the contract as to furnishing an abstract. The conveyance of the land from Van Wie to Augustyn was to be by warranty deed delivered at the First National Bank of Ord, Nebraska, and all remaining payments were to be made at said place.

It further appears from the record that no abstract of title was furnished by Van Wie at any time, no deed was deposited in the First National Bank of Ord, nor did Augustyn pay any part of the consideration for the lands excepting the $3,000 note and mortgage in controversy, which were delivered at the time of the execution of the contract. No special provision is made in the contract that time is to be of the essence of the contract, the only requirements being that the deed and abstract and the consideration of $24,500 remaining unpaid, after the assumption of the $30,000 mortgage already on the land and the giving of the $3,000 note and mortgage, were to be turned over on March 1, 1921. The contract also contained the following provision:

"It is further agreed that in case the said second party (Augustyn) shall fail on his part to perform the conditions of this contract by him to be done and performed, and shall fail to pay said deferred payments at the time and in the amounts herein set forth, then in such case the said first parties (Van Wie) shall retain the said $3,000 paid under the provisions of this contract as their liqui-dated damages for failure on the part of the second party to perform said contract; and it is further agreed that in case the said first parties shall on their part fail to perform the conditions of this contract and to convey said premises under its terms and at the time and place therein set forth, then and in such case they agree to and will repay said $3,000 to second party and will pay the said second party the further sum of $3,000 as liqui-dated damages by reason of the failure of the said first parties to comply with their said contract, and upon the payment of said amounts this contract shall terminate and both parties be released from all obligations thereunder. It being mutually agreed by the parties hereto that said provisions for the payments of the said sums of $3,000 by each of said parties is to be treated and considered as liquidated damages, and not as a penalty, and the agreement is made to avoid the expense and trouble in proving damages in case either of said parties fail to comply with the terms of this contract."

It further appears in evidence that the contract made by Augustyn with J. B. Ramel required the payment of $17,900 cash on March 1, 1921. Van Wie testifies that sometime in February, 1921, he had a conversation with Augustyn, and that Augustyn said, "I don't know where the money is coming from." He further testifies that later on he had another talk in which Augustyn wanted Van Wie to take some kind of security other than the payment of the $24,500 in money, but there was no agreement to modify the terms of the contract, but Augustyn denies that he had any such conversations with Van Wie.

There is testimony on one side, which is denied on the other, that Augustyn said he did not believe that Ramel would be able to make the payment of $17,900 by March 1, 1921, and he tried to arrange some way to obtain a deed from Van Wie so he could collect the forfeiture from Ramel provided for in their contract, but there was no consummation of this agreement. Van Wie testified that he was ready and able to comply with the contract and had his wife in town to sign the necessary deed, but that he did not comply with the contract because Augustyn told him that he could not make the payment. This statement Augustyn also denied, and testified that he was able to comply with the contract and make the payments on March 1, 1921; that he expected to get the $17,900 from Ramel, and that he had the other money ready.

It does not appear from the record that Augustyn demanded the deed and abstract or that Van Wie demanded the payment of the money on the 1st of March, 1921. It appears, however, that Augustyn came to town on March 1, 1921, for the purpose of closing up the contract with Van Wie, and also for the purpose of closing up his contract with Ramel, from whom he was to receive $17,900 in money; that he had only $6,000 in cash and expected to get the other from Ramel. The evidence is meager on both sides and somewhat conflicting as to what was said and done between Van Wie and Augustyn on March 1, 1921, when they were both in town. Augustyn testifies, in substance, that he had the money to pay the whole $24,500, but expected to get $17,900 from Ramel. Augustyn further testifies as follows: "Q. You say you got away? A. No; they got away. I wasn't far enough down; * * * they went up to Mr. Davis' office; I followed up there and asked Jonas Van Wie if they were ready to complete the deal. They didn't say nothing. After a while they go out and told me that I am out; they are making a deal between themselves. Q. Who told you this? A. Mr. Jonas Van Wie. Q. What

did you do?    A. I just walked out.    Q. Were you on the 1st of March, 1921, willing to comply with the conditions of this contract?    A. Yes; yes; yes.    Q. And did Jonas Van Wie or any one for him ever offer or tender to you an abstract of the land in this contract? A. No.    Q. Did Jonas Van Wie or any one for him ever offer or tender to you a deed for the land described in this contract?    A. No. * * * Q. Did Mr. Van Wie on the 1st day of March, 1921, demand of you at any time to close this deal?    A. No.    Q. Did he demand the balance of the payment under this contract?    A. No, sir.    Q. Did he tell you at any time on the 1st day of March that he was ready to close up the deal?    A. No, sir.    Q. Has he ever told you that?    A. No, sir.

It is further shown in the evidence, and not contradicted, that on the afternoon of the 1st of March, 1921, at about 4 o'clock, Van Wie entered into a contract with J. B. Ramel for the sale of this land to the said Ramel; a copy of said contract being introduced in evidence and bearing the false date and false certificate of acknowledgment of March 2, 1921; but the parties on the witness-stand testified that the same was made the day before.    In this contract the purchase price was fixed at $45,240, a part of which was taken in trade for other lands, while in the contract between Augustyn and J. B. Ramel for the same property the purchase price was fixed at $71,200, a part of which was taken in trade for other lands, and the purchase price in the contract between Van Wie and Augustyn, under their contract for said land, was $57,500.

The appellants present two propositions of law which they contend are applicable to this case, viz: First. Where a vendor fails to perform the conditions of his contract and sells to another, he thereby terminates his contract, and the vendee is relieved from all liability and entitled to recover back any money paid. Second. Where a vendor fails to tender an abstract and deed, the vendee is not in default until such tender; and if vendor sells to

another without tendering deed there is no default on the part of vendee, but he is relieved from liability and can recover back any money paid. In support of the first proposition the case of *Eaton v. Redick*, 1 Neb. 305, is cited, and in support of the second proposition the cases of *Adler v. Kohn*, 96 Neb. 346, *Patterson v. Murphy*, 41 Neb. 818, *Gillilan v. Rollins*, 41 Neb. 540, and other cases are cited.

Counsel for appellee Van Wie present two propositions of law in answer to those of appellants as applicable to the case from appellee's standpoint, the first of which is as follows: When a contract for the sale of real estate provides that upon nonperformance by the vendee the vendor may retain a payment made thereon as liquidated damages, the vendee cannot recover back the amount of such payment, unless he proves that he was able and ready to perform the contract on his part. Counsel for appellee cite the following cases in support of this proposition: *Patterson v. Murphy*, 41 Neb. 818; *Maloy v. Muir*, 62 Neb. 80; *Lowry v. Robinson*, 3 Neb. (Unof.) 145; 39 Cyc. 2025, 2047; *Battle v. Rochester City Bank*, 3 N. Y. 88.

The second proposition of law contended for by appellee is that where the purchaser repudiates a contract, or states that he cannot perform, the fact that the vendor has failed to tender a deed and abstract will not entitle the vendee to recover payments made by him on the contract, as the law does not require a vain act and a tender in such case is unnecessary. In support of this proposition the following cases are cited: *Johnson v. Higgins*, 77 Neb. 35; *Wasson v. Palmer*, 17 Neb. 330; 27 R. C. L. 529, sec. 259; 39 Cyc. 1377, 1541.

There is really little or no dispute about the law generally applicable to contracts for the sale of real estate, but the question is, which propositions of law advanced by the respective parties are applicable to the evidence in the case at bar? From the evidence preserved in the record it plainly appears that Charles

Augustyn did not desire nor intend to repudiate his contract with Jonas Van Wie, but that he came to town on the 1st of March, 1921, with the purpose, expectation and intention of completing such contract, and did not relinquish the idea of such completion until the afternoon of said day when he understood he was obliged to and was told by Van Wie that he was out, and that Van Wie and Ramel were making a deal between themselves for the same land.

We are further convinced from the evidence contained in the record that Van Wie did not on his part desire to complete the contract with Augustyn and did not intend to do so if he could avoid it. After making the contract with Augustyn and before the end of the time for its consummation, he entered into negotiations and signed a written agreement with J. B. Ramel for the sale of the same property to Ramel and for a less price than that for which he had sold it to Augustyn and at a much less price than that for which Augustyn had sold the same property to Ramel. This, on its face, would be an improper inducement for Ramel to go back on his contract with Augustyn.

It appears that Jonas Van Wie was an experienced and shrewd real estate dealer and that he had attorneys to advise and assist him in this transaction, while on the part of Augustyn it is just as plain that he was inexperienced in such business transactions, was not educated and understood the English language only imperfectly, and that he had no attorney or legal counsel to advise or assist him in this important business matter; and yet it appears that he had the confidence of banks and others having money to loan and who were willing to advance for him the necessary funds when required to complete the deal. Augustyn testifies, in substance, that he was to get $17,900 of the $24,500 from Mr. Ramel under his contract with him, and that he had $6,000 in cash, but that if Ramel did not pay him the amount due on the 1st of March he could and would have gotten this amount from

his friend, who was a banker and who would have let him have it.

There is nothing in the record tending to show the bad faith of Augustyn or his desire not to comply with the contract; while, on the other hand, there is convincing evidence that Van Wie, by his conversations with Augustyn, by his failure to furnish an abstract and deed, and by his entering into a contract for the sale of this same land with J. B. Ramel on the afternoon of March 1, 1921, in which he made it to the interests of Ramel not to comply with his contract with Augustyn, was desirous of and using his best endeavors not to comply on his part, and also to prevent Augustyn from complying with the contract between them. It is very evident that Van Wie was making it to the interest and advantage of Ramel not to furnish the $17,900 to Augustyn on the 1st of March, 1921, as he had agreed, so as to render Augustyn unable to make the cash payment at that time of $24,500. On the one hand, we have the honest endeavor and desire of an inexperienced and unlearned man, without legal counsel, to comply with his obligations; while, on the other hand, we have an intelligent and experienced real estate agent, acting under the advice of legal counsel, endeavoring to hinder, delay and prevent the consummation of the contract, and thereby enable him to retain and recover the forfeiture of the $3,000 note and mortgage which is sought to be foreclosed in this action. The conduct and actions of Jonas Van Wie, as they appear from the record evidence preserved in the bill of exceptions, clearly show duplicity and double dealing and savor very strongly of fraud. By his questionable conduct he was endeavoring to prevent a compliance with the contract by Augustyn for the purpose of enabling him to obtain an undue advantage and a forfeiture of the $3,000 note and mortgage received as part of the purchase price. There is nothing in the evidence to show that J. B. Ramel would not have complied with his contract of purchase with Augustyn and

paid over the $17,900 on the 1st of March, 1921, as he had agreed, had it not been for the machinations of Van Wie, who excited his cupidity by entering into a written contract with him by which he was to make several thousand dollars by such noncompliance.

In *Reiger v. Turley,* 151 Ia. 491, 501, the supreme court of Iowa say: "The law abhors forfeitures and will give them effect with reluctance and only when the right thereto has been clearly contracted for, and where the party claiming it has complied with all conditions imposed upon him by the contract or by the statute."

This court has given its sanction to the doctrine that forfeitures are looked upon with disapproval, and equity will generally relieve against them, especially where there is no evidence of loss or damage.

In *Springfield F. & M. Ins. Co. v. McLimans & Coyle,* 28 Neb. 846, this court used the following language: "Forfeitures are not favored, and should not be enforced unless the courts are compelled to do so."

In *Hanover Fire Ins. Co. v. Gustin,* 40 Neb. 828, 838, this court stated: "Forfeitures are odious in law and should never be enforced unless the court is compelled to do so." See *Adler v. Kohn,* 96 Neb. 346.

This court will not confirm a forfeiture induced by duplicity and overreaching. From the record it is plain that Augustyn honestly intended, expected and endeavored to comply with the terms of the contract on his part to be performed, but was prevented by the questionable conduct of Van Wie. The propositions of law presented by counsel for appellants Augustyn are applicable to the proofs, as we view them, contained in the record as it comes to us. With this view of the proofs and the law, we find generally for the appellants Charles Augustyn and Mary Augustyn, and against the cross-petitioner and appellee Jonas Van Wie; we find that neither party is entitled to a judgment of forfeiture; that the contract of purchase between Jonas Van Wie and Charles Augustyn should be set aside, as it has been aban-

doned and its terms not complied with by either party; and that the $3,000 note secured by mortgage given by Charles Augustyn and wife, sought to be foreclosed in this action, should be canceled and the record thereof released in the offices of the registers of deeds of Greeley and Valley counties.

The decree of the lower court is reversed and the cause remanded, with instructions to the district court for Garfield county to enter a decree in accordance with the findings of this court.

REVERSED.