RAY PESTER, APPELLEE, V. PAUL H. DEAN, APPELLANT.

FILED DECEMBER 11, 1936. No. 29744.

*Squires, Johnson & Johnson*, for appellant.

*Evans & Lee, contra.*

Heard before GOSS, C. J., GOOD, EBERLY and CARTER, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

This action was brought in May, 1933, by Ray Pester against Paul H. Dean upon a promissory note dated November 7, 1929, in the sum of $2,000 with interest thereon at 10 per cent. per annum from December 1, 1929. The note was secured by a chattel mortgage on corn belonging to Dean.

The defendant, Dean, filed his answer alleging that on the date the note was executed the plaintiff was the owner of certain real estate and that on said date plaintiff entered into an agreement with the defendant with reference to said real estate. Said agreement provided in part that Dean would pay $11,200 for said real estate, payable as follows: Cash in hand $2,000, receipt whereof is hereby acknowledged; balance as follows: The second party to give mortgage on the above land to secure two notes, one for $2,000 running for 15 months from December 1, 1929, and one for $4,000 running for 27 months from December 1, 1929, both bearing 6 per cent. interest, said interest being payable March 1, 1931, and March 1, 1932; that the first party is to assume and pay the interest which will accumulate on the amount of the two mortgages from December 1, 1929, to March 1, 1930; that first party is to accept as a part payment of the purchase price a second mortgage in the sum of $1,000 running for a term of five years from March 1, 1930, bearing 6 per cent. interest, payable annually. The contract also provided as follows:

"The first parties to the contract are to make and deposit a deed to the above described land which deed is to remain with the contract until it is fulfilled. The second party is to make the final payment of $2,200 on or before April 1, 1930, to be secured by a first and second mortgage on the above described property. The party of the second part further agrees to pay the taxes on said mortgage and the debt secured thereby, and to carry $........... insurance on

said property, payable in case of loss to said first party. The party of the first part is to furnish to the party of the second part, or assigns, a warranty deed and a good and merchantable abstract of title on or before December 1, 1929, assign all insurance on said buildings. Possession to be given to the property on March 1, 1930, but the deed to the land is not to be turned over to the second party until the final payment is made on the land. Pay all taxes assessed against said land, and if there is a mortgage on said property, pay interest thereon up to March 1, 1930. * * * It is mutually agreed that time is an essential element in this contract and it is further agreed that in case either of the parties hereto shall fail to perform the stipulation of this contract, or any part of the same, the failing party shall pay the other party of this contract the sum of $2,000."

The defendant further alleged that he signed said note as part of the same transaction and for the sole and only purpose of carrying out the terms and conditions of said agreement; that the plaintiff neglected and refused to carry out the terms and conditions of the agreement in any respect, and among other things alleged that the plaintiff failed to tender or give possession of said premises to the defendant; failed and refused to pay the taxes due March 1, 1930; failed and refused to pay the interest on the indebtedness, then a lien against said premises, that was owing March 1, 1930; that the plaintiff on March 7, 1930, sold and conveyed the premises to one Sherbeck for $11,200, and that said deed was recorded with the register of deeds of Custer county on March 9, 1930; that by reason of the failure of plaintiff to carry out the terms of said agreement said note became null and void and of no force and effect, and the same was without consideration, and that there was no liability upon the note by the defendant.

The reply of plaintiff was in the nature of a general denial, but admitting the note was given in lieu of cash as part payment of purchase price of the land and as part of the consideration for the purchase price of the land involved

in the transaction. The reply also alleged that defendant had failed to carry out the terms of the contract; that it was agreed between the parties that plaintiff was to pay taxes and other payments from money received from defendant when he paid the $2,000; that the defendant informed plaintiff before and after December 1, 1929, that he would not carry out terms of contract; that plaintiff paid taxes about March 1, 1930, and completed all terms of the contract; that the $2,000 note was liquidated damages to plaintiff. The reply admitted that plaintiff sold real estate in question to Sherbeck on March 7, 1930, but that Sherbeck agreed to convey the property back by deed upon demand.

A jury was waived and the case tried to the court. The court found for plaintiff, and defendant has appealed.

The case seems to have been tried on the allegations in the answer and reply. The appellant contends that the plaintiff rescinded and breached the contract and that there was therefore a failure of consideration for the note.

The appellee claims that rescission was not pleaded. In order to allege rescission of a contract, it hardly seems necessary to use the word "rescission," if facts are pleaded that show a rescission. The answer is not a model, but we think it states facts sufficient to admit evidence of rescission of the agreement.

After the agreement was made it was left in escrow with one H. S. Kinsey, vice-president of the Arcadia State Bank. Mr. Kinsey was to act for both parties in making up notes, deed and to look after abstract of title. The plaintiff executed deed immediately. The defendant sent the abstract to his attorneys immediately. The abstract of title was not ready December 1, 1929, and neither of the parties paid much attention to the transaction thereafter. Time was the essence of the contract, but the parties by their action waived it. The evidence does not show that the title was ever approved by defendant's attorneys, nor does it show just what took place as to approving the title. The defendant did not make any payments or execute any notes. The

plaintiff did not pay the taxes or interest on time. Nor did either party demand anything further of the other, except as shown in the conversation between the parties, hereinafter mentioned. About December 15, 1929, as claimed by plaintiff, and about March 1, 1930, as claimed by defendant, the parties met but had practically no conversation. Both agree that defendant said he was not going ahead with the contract and was not going to take the land. This was about all that was said. It does not appear that the parties met again until the trial of the case. The following is the statement by plaintiff to questions asked by the trial judge, referring to this conversation: "The Court: Did you consider the contract terminated when he told you that—you said he told you that he wasn't going ahead with the deal— did you consider the contract breached then? A.. Well, yes. The Court: And that that was the end of the deal? A. Yes; I did. The Court: That was what you thought? So then you went and tried to sell it to somebody else, did you? A. Yes, sir."

The next step seems to be this suit, which was filed May 24, 1933.

The parties stipulated that on March 7, 1930, plaintiff sold the real estate to one Sherbeck for a consideration of $11,200. This sale was before the last payment was to be made by defendant, and the consideration was for the same amount as the defendant was to pay for the land.

No mention is made of the note in suit in the contract for sale of the land. The parties agree that the note was executed and delivered to the plaintiff in lieu of the $2,000 cash payment provided for in the contract, and was a part of the original consideration for the real estate. The note was made the same day as the contract, and the other notes were to be made on December 1, 1929. The final payment by the defendant, as provided by the contract, was to be paid April 1, 1930.

As applicable to this state of facts, the defendant says that the plaintiff's act in selling the land constituted a rescission of the contract and put the parties *in statu quo,* and

that therefore the plaintiff cannot recover on the note given for part of the purchase price of the land. · ·

Nowhere does it appear that the note in suit was other than a substitute given in lieu of the cash payment mentioned in the contract. The note seems to have been given as part of the same transaction as the agreement. The plaintiff testified: "Q. This note shows $2,000 for value received, and I wish you would state to the court whether or not this is part of some transaction. (No answer.) Q. This was given as part of some transaction that was entered into on that day, November 7, 1929, was it not? A. Yes. Q. I wish you would state to the court just what that transaction was. A. That was a down payment on a quarter section of land that I sold him."

The escrow holder of the papers was not sure that the note was left with him. At least this part of the transaction is not made clear by the evidence. The agreement had no provision as to forfeiture of the money or note in lieu thereof, if defendant defaulted in carrying out the terms of the contract.

In support of the proposition that the plaintiff rescinded the agreement when he sold the land after the defendant refused to carry out the terms of the contract, the appellant cites many authorities, including *Eaton v. Redick,* 1 Neb. 305; *Durland Trust Co. v. Augustyn,* 110 Neb. 800, 195 N. W. 172; *Lowry v. Robinson,* 3 Neb. (Unof.) 145, 91 N. W. 174; *Adler v. Kohn,* 96 Neb. 346, 147 N. W. 1131; *Dent v. Johnson,* 111 Neb. 162, 195 N. W. 938.

The holdings of the courts in the different states largely depend upon the wording of the agreement under consideration in each case, that is, whether or not the agreement provided that the seller on default of the purchaser might terminate the agreement and retain what had been paid on the contract. The decisions are at variance. In the early Nebraska case of *Eaton v. Redick, supra,* this court announced the rule that, when the vendor availed himself of the vendee's default and elected to put an end to the contract by reselling the real estate to another, the vendee

might recover back the money he has paid in part performance, with interest from the date of rescission. Also, there appears to have been no clause in the agreement providing for forfeiture in that case.

The appellee claims that the *Eaton* case has been virtually overruled by this court in the cases of *Patterson v. Murphy*, 41 Neb. 818, 60 N. W. 1, and *Maloy v. Muir*, 62 Neb. 80, 86 N. W. 916. It will be noted in both of the last-named cases the contract contained the provision for forfeiture of advance payments if the purchaser defaulted in payment. In each of these cases the contract controlled. But the *Eaton* case has not been overruled. There are expressions in the cases last cited, which, separated from their context, seem to support the appellee's contention. Such expressions are argumentative and should be considered in reference to those cases only. In later cases in this court the *Eaton* case has been cited and approved.

In *Lowry v. Robinson, supra,* the *Eaton* case is approved in the following language: "Plaintiff's contention is that the fact of the cancelation of the contract for sale and purchase is in itself sufficient to authorize plaintiff to recover the purchase money paid. The rule seems reasonable and settled upon authority that where a contract of sale and purchase has been rescinded, the vendor cannot thereafter retain the part payment of purchase money which he may have received. The vendee is entitled to repayment of the purchase money subject to any recoupment for damages due the vendor provided the rescission of the contract was on account of the failure of the vendee to comply with its terms. It is probably likewise true that where the contract is rescinded by mutual consent, the vendee is entitled to a like repayment of the purchase money paid. *Eaton v. Redick*, 1 Neb. 305; *Shively v. Semi-Tropic Land & Water Co.*, 33 Pac. 848 (99 Cal. 259) ; *Cleary v. Folger*, 24 Pac. 280 (84 Cal. 316) ; *Evans v. Bently*, 29 S. W. (Tex.) 497. But the general rule is subject to the contract or agreement of the parties in making the rescission."

In *Adler v. Cohn, supra,* is the following language in the

opinion: "In *Eaton v. Redick,* 1 Neb. 305, it was held that, when the vendor exercised his option to rescind the contract, the parties stand as if no contract had ever subsisted between them."

In *Durland Trust Co. v. Augustyn, supra,* the *Eaton* case is cited to a like proposition of law, which is approved by the court. In *Dent v. Johnson, supra,* this court cited the *Eaton* case as authority to the proposition that, if a vendee was in default, a subsequent sale by the vendor amounted to a rescission by him, and he became liable for the purchase money paid. These cases were all decided since *Patterson v. Murphy, supra,* and *Maloy v. Muir, supra.*

In these Nebraska cases the decisive point seems to be whether or not the agreement provided for a forfeiture of the advance payment in default of subsequent payments by the purchaser. We think this court is committed to the rule that, where there is a rescission of the contract by the vendor because of failure to make payments by the vendee and the vendor sells the real estate to another before the time of final compliance by the vendee, the vendor should return the payments made by the vendee, unless the agreement provides otherwise. Also, that a resale of the real estate by the vendor, when the vendee is in default under the contract, before the time of final performance by vendee, and where no provision is made in the contract for forfeiture of advance payment, amounts to a rescission of the contract by the vendor. Of course, if the vendor is not permitted to retain the advance payment made on a contract as a forfeiture, he will not be permitted to recover on a note given in lieu of such advance payment.

The case of *King v. Waterman,* 55 Neb. 324, 75 N. W. 830, cited by appellant, is not applicable. In this case the note was an independent transaction from the agreement. In the instant case there is no independent contract in the sense that the contract was not a part of the same transaction as the note. In the case under consideration the parties treated the note in suit and the agreement as the same transaction and each so testified.

The appellee cites many authorities from other states to the proposition that there is no rescission by a resale of real estate by vendor when vendee is in default, and that vendor may retain the advance payment by vendee; but in most of those cases there is a provision in the agreement that the vendee shall forfeit the advance payment in the event of vendee's default.

On the proposition that plaintiff is entitled to all his damages in the event of rescission for vendee's default, the plaintiff relies on *Allison v. Cocke's Exrs.*, 112 Ky. 212, 65 S. W. 342. Also, that if there is a mutual rescission the vendor must be placed *in statu quo*. These contentions would be true if appellee had adopted that theory of the case and pleaded damages. He did not plead any damage and plaintiff objected to such evidence being put in the record. In *Allison v. Cocke's Exrs.*, *supra*, such damages are pleaded. The court, over defendant's objection, did permit some items of damage, but damages cannot be recovered as they were not pleaded. The appellee states in his brief that the court on motion of defendant struck from plaintiff's reply the allegation of damages. That order was right. However, there is no cross-appeal and it cannot be considered now. Again, the plaintiff brought suit on the note, and the defendant set up facts as to the whole transaction, and defendant joined as to this theory, and, in a sense, plaintiff abandoned the action as one on a promissory note, but did not set up any damages. None can be recovered.

The appellee contends as another reason why the judgment of the trial court should be sustained that the stipulated damage clause in the contract would indicate that the plaintiff was to retain the $2,000 payment or note in lieu thereof made to him in case of defendant's default. The contract will bear no such construction. Nowhere is it said or implied in the agreement that in case of a breach of the contract defendant would pay or forfeit to the plaintiff the $2,000 advance payment or that plaintiff could collect the note. The contract provides and states that the defendant

has paid $2,000 cash as an advance payment. Nothing is said as to the forfeiture of this payment.

.The contract provides: "That in case either of the parties hereto shall fail to perform the stipulation of this contract, or any part of the same, the failing party shall pay the other party * * * the sum of $2,000." This fixed the liability of the parties in case of default by either. If one party defaulted the other party would have an action for his damages. Nowhere is it stated or inferred that the $2,000 note was to be taken and collected in lieu of the $2,000 provided for as damages in the event of default by either party. There could be no contention that in case of default by either party the contract did. not obligate one party the same as the other, but if the defendant is held liable on the note on account of the breach of contract under the clause providing for recovery against the one in default, defendant would have to pay 10 per cent. interest from December 1,. 1929, as provided in the note. If either party wished to bring suit against the other on the damage clause, he could not obtain 10 per cent. interest, but only the·legal interest as provided by law. This view of the case makes it unnecessary to decide whether the contract provided for liquidated damages or a penalty.

· The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.